Alright, it will be my pleasure to begin the session. The Honorable Justice Lance Fitzgerald Smith is presiding. Have a seat. I'll call the first case. 15-307 Leslie Andrews v. Norfolk & Southern R.R. Corporation. Please step up and identify yourselves. Your Honor, Stephen Garmese here for the Plaintiff Appellant Leslie Andrews. Your Honor, I'm a prosecutor with the Norfolk & Southern R.R. Corporation. Alright, you know our general rules are 15-15 and we're kind of liberal but we do have other cases so you can't spend the whole day here. If I may, I'd like to reserve five minutes for rebuttal, Your Honor. And realize that is not a microphone, that's to record, so you're speaking to us. Got it. Thank you. Self-amplification, which I know you're capable of. Thank you, Your Honor. Your Honor, if it may, if it pleases the Court, if I may proceed. This case presents a question of first impression about the interplay between Section 55 of the Federal Employers Viability Act and Section 12-187 of the Illinois Code of Civil Procedure, an old procedural law concerning set-offs. This is, factually, it's a bit of an unusual case. There was a judgment of a verdict of $150,000 in damages in a personal injury case under the FVLA. There was a finding of 75% contributory fault. Of course, under the FVLA, it's pure, there could be 90% contributory fault and the employee still gets 10% recovery. The judgment was, therefore, reduced to $37,500. It turns out that the litigation expenses were $49,000. The railroad had advanced before trial, before Mr. Andrews hired Roy and Farina, $75,000. And he had signed contracts saying that the amount of the advances shall be credited, not a set-off, it just said a credit against any settlement or judgment against the railroad or others. So they contemplated that it was not just railroad. I'm sorry for interrupting already, but let's talk about the factual scenario here in terms of things that happen and how long they've been involved in the case. The first thing that happened is the accident. The second thing is that the railroad started paying him money, right? Correct. Would you agree with me? Yes, sir. Then why should we reach this legal issue at all if you don't raise it for the first time until a motion to reconsider? Well, the judge, he could have found a waiver, but he said that he's not finding waiver. And we briefed that issue thoroughly whether or not when you've raised an issue of law and say, well, this is a question of whether or not federal law preempts state law on this. How is that different from the case that happened to be in the law bulletin on Monday? And all of us are faithful readers of your column, and it seems like the motion to reconsider issue, maybe we could just deal with it there in that region. Well, that to me was an outlier. That was rather remarkable. We had a trial judge saying I'm not waiving, I'm going to consider this, and then she ruled the same way. I said that was an abuse. That was frankly, and I hope I never have to have an appeal down in the 4th District, I think that was out of bounds. But Justice Steigman's analysis is based on a case that was in front of them 26 years ago and has been cited a number of times and would appear to be good law. So what do you have going for you that the plaintiff in that case didn't have going for them? Well, I think it's up to the trial judge. Well, the question is does a trial judge have discretion to consider a statute that wasn't raised before on a motion for reconsideration? And Judge Panter said I'm not waiving. I'm not considering this waived. I'll let you argue this statute, and he came out the same way. I think you're lucky here because I think your opponent may have forfeited the forfeiture. Well, he was going straight to the merits. Okay. Sorry to interrupt. Go ahead. So what we have here is Section 55 of the FDLA starts out with it was aimed at an old real-world practice where they would have people, they had what they called relief societies, whatever, benefit societies, and if you wanted to participate, you had to waive any rights you had to recovery under the FDLA. And Congress said no. Section 55 says any contract, rule, regulation that exculpates the railroad from liability under this section is void. And there's a whole line of cases about, well, what about settlement agreements when you really had arm's-length negotiations? But then it goes on to the provided clause. It says provided that they may claim a set-off. So it's like the question was, well, wait a second. If we make an advance before trial, and what they do is as soon as you hire an attorney, they stop the advances. Sure. So it's, you know, as Judge Panther was looking at it as, you know, well, gee, we have to encourage them to pay these advances. And it's like they do it to keep people away from attorneys. Why should we decide this case on the basis of state law as opposed to the federal substantive law? The question is whether or not the federal law preempts it. If the federal law preempts it, then that answers the question. And I'm saying that there's several reasons why there's no preemption. First of all, the statute uses the word, discretionary word, may, not shall. It doesn't say they shall have a right to a set-off. They may claim a set-off. And it's one of the ‑‑ I think the key case is the nicest exposition of the preemption is from the U.S. Supreme Court in the Gilberry case. Again, it's, you know, the fundamental preemption law, there's three types of preemption. There's express preemption, field preemption, and conflict preemption. There's no express preemption provision in the FDLA. A set of cases, it's recognized that. There's no field preemption under the FDLA because it's commonly recognized that there are some state regulation that applies here. And there's bedrock FDLA law is that state procedure applies. State procedure applies because Congress contemplated that state procedures would be applied. They gave the right to plaintiffs to sue in either federal or state court. And as the court says, as U.S. Supreme Court says, they contemplated that state procedure would apply. So what I'm saying is here we have section 12-187 of the Illinois Code of Civil Procedure. It's procedural. It's a set-off. And as the case law says, I think it's the Lake County grading case, it says set-offs are a procedural aspect of the law. And one case has said it's set-offs are a procedural gimmick. So based on that, you have the state procedure on set-offs should apply, and there's no preemption. But what the U.S. Supreme Court said in the Gilberry case, it says they recognize Congress may leave part of the subject open to state action. Congress may so circumscribe its regulation as to leave part of the subject open to state action. And they ordinarily, and this was an FDLA case, it was Gilberry v. Cuyahoga Valley Railroad Company, and the U.S. Supreme Court said ordinarily the intent to preempt will not be implied unless when fairly interpreted, the federal measure is plainly inconsistent with state regulation of the same manner. And I'm respectfully saying it's because Congress used the word may, not shall, in the provided section of Section 55, they left the room open, they left room for applying state procedural law such as set-offs. And what Section 12-187 does is, as the Illinois Appellate Court said years ago, it gives a preference to the recovery of the plaintiff's attorney for fees and expenses. And what is your contract or your statute under the American rule that says that you can do this? You don't even have anything. We're not shifting. What I'm saying is this is Illinois law I'm looking at, and I'm saying under Illinois law, we don't do that. Well, under Illinois law, it's right there in section. I know what you're saying, but I'm saying the common practice is not to benefit. That's correct. And except for in this aspect. So this is a way out except for. This is like mini, mini, mini out there. No, it's right there in the statute. It's right there in Section 12-187. There shall be no set-off to the extent you can claim, it says you can claim a set-off. So you want to benefit somebody, in other words, a double recovery. Well, he didn't get, no, he didn't get any expenses. This has nothing to do with the plaintiff. The plaintiff's not going to get any money. No, he's not going to get anything. But indirectly, it becomes a double recovery. But he didn't get any, well, when he got the payments forward for missed pay, he didn't get any recovery. He didn't get any payment for attorney's fees or litigation expenses. Right. So if they had said, well, we already paid his attorney's fees and we already paid his litigation expenses of $49,000, but that was money for his missed pay. And there are three reasons why I think preemption doesn't apply. One, there's no conflict here. They use the word, Congress uses the word may. Two, it's this, the FBLA is liberally construed in favor of injured railroad employees. And that's just from the U.S. Supreme Court. Three, it's a procedural law, and state procedural law applies. Third, there's a federal regulation that the railroad, they are competing liens. They're competing interests. The Railroad Retirement Board gave him $23,000 for disability.  Right. They get a lien. But under the federal regulation, they do not, when they calculate the amount of their lien, they deduct first litigation expenses and litigation fees and costs. So that's the federal policy. And so they said, well, then because his litigation expenses exceed the amount of their $23,000 lien, they've got no claim. But what we found here, it's, I think, even though in a sense it's a question of first impression, at least under Section 12, under the Illinois Procedural Law, there is that decision by Judge Bechtol in the Reese versus Amtrak case where he said that it's Is that the federal? Yes. Right. And I went to, I looked to see if there was anything new yesterday. And that's it. That's the only case. That's it. And so here we have, but at least there's a judge who's saying this is a limited exception, the provided clause that says you may claim a set-off, you may ask for a set-off. It's a limited exception to the general rule prohibiting contract limits that limit the railroad's liability under the FBLA. It's, as Judge Bechtol said, it does not, it doesn't give the railroad a priority over other liens or other claims. And so that in that case, he said the plaintiff's attorneys here under the local Pennsylvania law, they were entitled to their fees before the railroad got to claim a set-off under Section 55. He said it's a, Section 55 is a limited exception. It does not preempt the state procedural law. It doesn't give the railroad a priority over competing claims. Because you could have hospitals, RRB, everybody's claiming a, got a lien claim. And he said an MTRAC may reap the benefit of its claimed offset only insofar as it does not infringe upon a reason's attorney's lien. Now, in this case, it's the state's, it's the statute, and what the Illinois statute basically does, Your Honor, it's not really quite an American rule situation. It's more like a common fund situation where the attorneys did the work. They hired the experts. They paid $49,000 in fees and cost litigation expenses. And they basically, it's just like that's the common, they created the common fund. And it's an unusual place. Wouldn't the result that you want, though, sort of encourage railroads to not pay people and make them go to their lawyers early? You know, we're not going to pay you. Especially in a case where, you know, you might get as much as 75% parity. Well, then they have to weigh the fact that if they keep the person talking long enough and just say, let's see how things go, then three years are gone, and it's a statute of repose. So they can't come in and say, well, but they lowered me into not suing and not hiring a tenant. It's a statute of repose. It's three years. If they keep the guy going for three years, it's too bad. So that's, I'm not worried about the railroads. I don't think we have to worry about the railroads. But I think finally I would say that essentially they drafted a contract that did not mirror the language of the statute. The statute, section 55, talks about a set up. Their contract talked about a credit, that there shall be a credit. Well, but that leaves room for application of Illinois law, section 12-187, as an implied part of the contract. And so then it would overrule, it would apply to, without even getting to the issue of federal preemption. It's the way they drafted the contract. Because they know that they're smart. And they know that sometimes you've got a case where you've got a third-party torque teaser. That's a classic situation. Somebody goes over the railroad tracks, ignores the signals, ignores the warning flashing lights, causes a derailment. A railroad might be possibly liable if something was negligent, but the motorist is also liable. So you've got a situation. And the way they drafted it is they said, well, we want a credit as to if you get a settlement against somebody else. So when you look at their contract, an implied term of their contract is the state statute. And so I don't think the Court even has to get into federal preemption, the preemption issue. But I think that this is really a situation where there's no preemption. Because particularly, as Yellowknot Appellate Court said, and I think it might have been Yellowknot Supreme Court, when you've got an area that is traditionally governed by state law, we're reluctant to find preemption. And when it comes to attorney's fees, that's state law. That's not governed by FDLA. There's just nothing in FDLA about attorney's fees, nothing in FDLA about recovery for litigation expenses. Congress left it. They don't really care. They say, you work it out. State law applies. I mean, it's a similar thing. The closest thing I can think of is a case I heard years ago, the Shadel case in the Seventh Circuit, where there was an issue that was not covered expressly under the FDLA. How do you apportion a contribution from a joint tort feeser? And the railroad wanted to use the Admiralty Rule, which was based on some U.S. Supreme Court Admiralty case. They said, no, the Illinois Joint Tort Feeser Contribution Act should apply because that's left open. And Judge Batchelor ruled for us. And the Seventh Circuit did something very interesting. They said, because the railroad keeps talking about we want uniform law, we want uniform law. And the Seventh Circuit said, we'll give you uniform law. We're adopting the Illinois statute. The Illinois statutory approach, that makes sense to us. So if they want a uniform law, that's now the uniform law under Shadel. But it just shows there's lots of questions that are not covered by FDLA. Joint tort feeser contribution, how do you do that? It's not covered. Sole proximate cause? Sole proximate cause. That came out just yesterday, right? Yeah, that was, yes. Before we have you press your mute button, let me ask you to explain an issue that came up in the briefs. And that was the suggestion that we should pay careful attention to the fact that they pled the setoff as an affirmative defense and that therefore there are two judgments. What's the significance of that in terms of our review of this matter? Well, I think they were saying the statute doesn't apply because there was no other judgment. And I said, well, wait. They amended, they asked for leave to amend their pleading afterwards to assert the setoff. And, you know, I think, and Judge Pantadine said, fair is fair. He gave them leave to amend their complaint post-judgment to assert their claim based on these advances. And then he said, you know, there was no, it was not a poll, there was no allegation that he didn't get the money. And so the judge made the finding that he had received this money and then based his calculations on that finding. So I'm saying there were two judgments in essence. There was the judgment of $37,500 and there was a judgment that, yeah, they gave him the $75,000 in advances. So I would ask the court to rule that there is no preemption and that in any event the contract controls and that the statute, the Illinois statute is an implied term of the contract. All right. Thank you. Counsel. Good morning, pal. Mr. Garmisa. Clearly we're not here for me to agree with Mr. Garmisa. This would be boring. And I'd lose my job on top of that. In the next case, they actually probably will agree. In this case, I think the issue is relatively simple. We've got Illinois State Supreme Court decisions that clearly adopt the American rule that clearly prohibit double recovery. We've got the FELA that clearly was adopted to prohibit double recovery. And the case law under it specifically states that the reason that employers were given the right to a set off or payments made for the benefit or care of an employee that was injured was to avoid exactly this situation. We paid $75,000 in advance not as Mr. Garmisa, and as much as I admire Mr. Garmisa and I'm a friend with him, not as payments for his salary. We were giving him, in fact, his net salary, but it was paid as an advance on any damages that he might collect later through settlement or through a judgment. In fact, so our position is we advance satisfied this, period. It's as simple as that. And to Your Honor's various questions, there is no third-party tort action involved here. We don't have to go there. The court need not extend any consideration to the question of whether others or whether there's a claim by Norfolk Southern against some others, nor need it make any judgment that we're finding today that would extend beyond the facts of this case. There's not a common fund here. Our money was paid in advance. They created no fund because we paid it all in advance. This is an issue where they would have a right to the participation fees from a common fund. The Railroad Retirement Board argument is not applicable here. For the same reasons, the Railroad Retirement Board routinely waives any recovery on minimal judgments or settlements to the extent that there are medical bills that are outstanding or have been paid to the extent that attorneys' fees or costs have been paid. They waived it, and so there's no applicability to this court's consideration of whether or not they had a priority over anybody, nor does the fact that they have an internal regulation that says we will typically waive to the extent of an attorney's fees or expenses or costs bear any importance to this court. And finally, in terms of what shouldn't be considered by this court, the liberal construction of the FBLA flows to the employee. The employee has a liberal construction. He or she has rights. Those rights were protected in this lawsuit. He tried the lawsuit to turn down settlements. That was his decision. Now we're faced merely simply with a point to this court of, that employee is not going to see a penny of this. And what they want to do is they want to turn Illinois judicial decisions and statutory law and federal law on its head and say, throw the American rollout, tax costs, tax fees, to an extent even in excess of what the judgment was. Now, if we were ordered to pay this, we would have paid total at the end of the day, forget post-judgment interest if that should be a word, roughly three and a half times or 3.3 times what the actual judgment was. That is the clearest violation of any federal or state public policy in this country. Thank you. I can go to Earl if no one has an answer or question. You're done. Thank you for your time. I'd like to try to set a record for the shortest rebuttal here, reply. I would just like to quote one or two sentences from the Illinois Appellate Court's decision in Siegel. It was Adam Martin Construction v. Band and Partnership, 1st District, 1985. The purpose of exempting attorney's fees from the set-off provision is to render the attorney's claim for fees preferred as against his client's judgment creditors. So here they are claiming a right to recover for the advances, claiming a right to a credit, and the Illinois statute, consistent with federal law, it gives the attorney's claim for fees and expenses, it makes it a preferred claim. And that's just a straight application of the Illinois statute, and it's recognized by the Illinois Appellate Court in decisions that go back to the 1800s. I think if we trace it back, this statute might have gone back to the old ride around the circuit on horseback days. So I would ask the Court to respectfully reverse and remand for further proceedings. Thank you. Thank you. Is there a hack? No, no, no. You push that button. No, thank you. Your briefs were very interesting and your arguments were very good. So we appreciate your time.